IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

GREGORY JAMES SHIVER,                    )
                                         )
          Petitioner,                    )
                                         )
v.                                       )     Civil Action No. 1:11cv179-MEF
                                         )              (WO)
UNITED STATES OF AMERICA,                )
                                         )
          Respondent.                    )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the court on a motion to vacate, set aside, or correct sentence

pursuant to 28 U.S.C. § 2255.

## I.   BACKGROUND

On July 25, 2007, a jury found the petitioner, Gregory James Shiver ("Shiver"), guilty

of knowingly possessing child pornography in interstate or foreign commerce, in violation

of 18 U.S.C. § 2252A(a)(5)(B).  On November 9, 2007, the court sentenced Shiver to 168

months in prison.

Shiver appealed, arguing that the court erred in denying his motion for a judgment of

acquittal because (1) there was insufficient evidence that the images of child pornography

found on his computer had traveled in interstate or foreign commerce, and (2) there was

insufficient evidence that he "knowingly possessed" the illicit images.  Shiver also argued

that the court erred in enhancing his sentence pursuant to 18 U.S.C. § 2252A(b)(2) based on

his conviction for another offense that occurred after he committed the offense at issue in the

instant case.

On December 31, 2008, the Eleventh Circuit affirmed his conviction but vacated Shiver's sentence. The appellate court concluded that the court had erred by applying an enhancement to Shiver's sentence based on a conviction that occurred after the conduct forming the basis of his prosecution in the instant case. *United States v. Shiver*, 305 Fed. App'x. 640 (11th Cir. 2008) (unpublished). The Eleventh Circuit remanded the case for resentencing without the enhancement. *Id*. at 644. In all other respects, however, the appellate court found no merit in Shiver's arguments on appeal and affirmed Shiver's conviction. *Id*. at 641-43.

On April 24, 2009, following a resentencing hearing, the court resentenced Shiver to 120 months in prison. Shiver appealed the resentenced, arguing that (1) the court abused its discretion under 18 U.S.C. § 3584(a), by ordering that his 120-month sentence run consecutively to any future state sentence imposed, and (2) his 120-month sentence was unreasonable. On December 17, 2009, the Eleventh Circuit rejected Shiver's arguments and affirmed his sentence. *United States v. Shiver*, 357 Fed. App'x. 256 (11th Cir. 2009) (unpublished). Shiver did not seek certiorari review in the United States Supreme Court.

On March 11, 2011, Shiver filed this 28 U.S.C. § 2255 motion asserting the following ineffective assistance of counsel claims:

> 1.   Trial counsel rendered ineffective assistance by failing to move for dismissal of the indictment based on a violation of the Speedy Trial Act, and appellate counsel was likewise ineffective for failing to pursue such a claim on appeal.

2

2.  Counsel rendered ineffective assistance at trial and sentencing by failing to prepare and present an adequate defense. Specifically, counsel:

   a.  failed to rebut or counter information obtained and used at trial by the Government from his original presentence investigation report ("PSI");

   b.  failed to be present at his second PSI interview, and as a result, information adverse to him was used for sentencing purposes;

   c.  failed to investigate and ensure that the information contained in the PSI was accurate;

   d.  failed to present at trial any affirmative defenses as set forth in 18 U.S.C. § 2252A;

   e.  failed to attack or impeach at trial the erroneous testimony of Government witnesses;

   f.  failed to argue that the Government selectively presented facts to the jury;

   g.  failed to argue that there was no proof that he viewed the images of child pornography found on his computer or that those images were accidentally or incidentally downloaded to his computer; and

   h.  committed errors that, considered cumulatively, prejudiced his defense.

3.  Trial counsel rendered ineffective assistance by interfering with his right to testify at trial in his own defense by failing to properly advise him about the advantages and disadvantages of exercising his right to testify.

4.  Trial counsel rendered ineffective assistance by failing to argue against admission of his statements to a mental health counselor,

as well as any evidence obtained as a result of such statements, on the ground that he was not given a *Miranda* warning before talking to the counselor.

5. Appellate counsel rendered ineffective assistance by failing to raise on appeal the district court's error in denying removal of a juror purportedly related to the victim's family in a state case where Shiver had been charged with child molestation.

6. Trial counsel rendered ineffective assistance by failing to object at sentencing to the number of child pornography images used to determine his sentence.

7. Counsel rendered ineffective assistance by failing to object to the district court's refusal to accept the plea agreement and by failing to raise this issue on appeal.

8. Counsel rendered ineffective assistance by failing to object to the district court's "mandatory treatment" of the sentencing guidelines and its failure to comply with 18 U.S.C. § 3553(a), and by failing to raise this issue on appeal.

9. Appellate counsel rendered ineffective assistance by failing to raise on appeal all the issues now presented in the § 2255 motion.

(Doc. Nos. 2 & 3).[1]

The Government answers that none of Shiver's allegations of ineffective assistance of counsel are meritorious and that he, therefore, is not entitled to collateral relief through his § 2255 motion. (Doc. No. 20). Shiver was afforded an opportunity to respond to the Government's submissions, and did so. (Doc. No. 26).

---

[1] Document numbers are those assigned by the Clerk in the instant civil action or, where applicable, in Shiver's criminal proceedings, *United States v. Shiver*, Case No. 1:05cr256-LSC (M.D. Ala. 2007). Page references to pleadings are to those assigned by CM/ECF. Unless otherwise indicated, references to exhibits ("Exh.") are to those filed by the Government with its answer, Doc. No. 20.

4

After due consideration and upon review of the motion and the pleadings filed in the case, the court determined that an evidentiary hearing was required on one very limited issue. On June 17, 2013, the court held a hearing on Shiver's claim that his counsel interfered with his right to testify by failing to advise him about the advantages and disadvantages of exercising that right. Based on the evidence presented to the court at the hearing and the court's consideration of parties' submissions and the record before the court, the court concludes that Shiver's § 2255 motion should be DENIED.

## II.   DISCUSSION

### A.   *General Standard of Review*

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to 28 U.S.C. § 2255 are extremely limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted)

### B. Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is governed by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). *Grossman v. McDonough*, 466 F.3d 1325, 1344 (11th Cir. 2006). Under *Strickland*'s two-part test, a petitioner must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (internal quotation marks omitted); *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id.* (internal quotation marks and brackets omitted). Thus, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id.*

As noted above, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694. A "reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of appellate counsel may be shown if the movant can "establish . . . that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker . . . Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir. 1994).

### 1.    Counsel's Failure to Seek Dismissal Based on Violation of Speedy Trial Act

Shiver argues that his trial counsel[2] provided ineffective assistance by failing to move for mandatory dismissal of the indictment based on a violation of his rights under the Speedy Trial Act, 18 U.S.C. §§ 3161-74. (Doc. No. 2 at 4; Doc. No. 3 at 5-11; Doc. No. 26 at 1-3). He further argues that his appellate counsel should have pursued such a claim on appeal. (*Id.*)

#### The Speedy Trial Act

In general, the Speedy Trial Act provides that a criminal defendant must be tried within 70 days of the filing of an indictment or an arraignment, whichever is later. 18 U.S.C. § 3161(c)(1). However, the Act provides a detailed scheme for determining whether specified periods of delay are counted or whether the speedy trial clock is tolled. *See id*. § 3161(h). For example, delays resulting from pretrial motions constitute "excludable time." *See id*. § 3161(h)(1)(F) (excluding from the 70-day period delay from the filing of a pretrial motion through the conclusion of the hearing on, or other prompt disposition of, such motion). Moreover, delays resulting from pretrial continuances may constitute excludable

---

[2] Shiver originally retained attorney Derek E. Yarbrough to represent him. Yarbrough represented Shiver during proceedings that included his entry and subsequent withdrawal of a guilty plea. He was later allowed to withdraw as Shiver's counsel, whereupon Shiver moved to be allowed to represent himself. Shiver's request was granted, and he proceeded in a *pro se* status for several months. Attorney Kevin Butler of the Federal Defender's Office was appointed to assist Shiver in a standby capacity while Shiver proceeded *pro se*. Shortly before his trial began, Shiver moved to have Butler appointed as his counsel and to withdraw from self-representation. Butler was appointed as counsel and represented Shiver throughout the trial proceedings, at sentencing, and on appeal. Attorney Morad Fakhimi, also with the Federal Defender's Office, served as second chair to Butler from shortly before the trial began through sentencing and assisted Butler in preparing the appellate brief that was filed on Shiver's behalf.

time tolling the speedy trial clock.  *See id*. § 3161(h).  A delay resulting from a continuance, however, only tolls the clock if the district court makes findings that the ends of justice served by granting the continuance outweigh the best interests of the public and the defendant in a speedy trial.  *See id*. § 3161(h)(7)(A).[3]  If the defendant is not brought to trial within the 70-day period for unexcluded time, the defendant may move to dismiss the indictment, and the district court must grant that motion and dismiss the indictment.  *See id*. § 3162(a)(2).

The indictment charging Shiver with one count of possession of child pornography was returned on November 15, 2005.  Shiver originally pled guilty to that charge on February 8, 2006.  However, at a sentencing hearing on May 30, 2006, Shiver moved to withdraw his guilty plea.  On that same date, the district court granted his motion to withdraw his guilty plea.  Pursuant to 18 U.S.C. § 3161(i), when a guilty plea is entered but later withdrawn, a defendant is deemed indicted on the day the order permitting withdrawal of the plea becomes final, thereby restarting the Speedy Trial Act's 70-day clock.  *See United States v. Mays*, 424 Fed. App'x. 830, 832 (11th Cir. 2011) (citing 18 U.S.C. § 3161(i)); *United States v. Solon*, 596 F.3d 1206, 1214 (10th Cir. 2010); *United States v. Solorzano–Rivera*, 368 F.3d 1073, 1078-79 (9th Cir. 2004).  Thus, for purposes of Shiver's case, the pertinent date for determining the existence of any Speedy Trial Act violation based on post-indictment delay is May 30, 2006, the date on which the district court granted his motion to withdraw his

---

[3] Before 2008, subsection (h)(7) of § 3161 appeared as subsection (h)(8).

guilty plea.  Shiver's trial commenced on July 23, 2007.  Shiver maintains that more than 70 days of non-excludable time under the Speedy Trial Act fell between May 30, 2006, and July 23, 2007, and that therefore his counsel was ineffective for failing to seek the mandatory dismissal of his indictment based on a violation of the Act.

*Factual Background*

The record reflects that on July 6, 2006 (approximately 37 days after the speedy-trial clock had begun to run), Shiver's retained counsel, Derek E. Yarbrough, filed a motion for a continuance requesting that Shiver's trial date, then scheduled for October 2, 2006, be continued due to a serious family conflict[4] that would interfere with counsel's ability to effectively represent Shiver on the scheduled trial date.  (Exh. I).  On July 13, 2006, the district court granted the motion for a continuance, making the required ends-of-justice determination and rescheduling the trial for November 27, 2006.[5]  *(*Exh. J).  Accordingly, pursuant to 18 U.S.C.§ 3161(h)(7)(A), all time between defense counsel Yarbrough's July 6, 2006, filing of the motion for a continuance and the rescheduled trial date of November 26, 2006, was excludable for purposes of a speedy-trial calculation under the Speedy Trial Act.  Shiver does not appear to challenge the excludability of any of this time.

Between July 31, 2006, and November 17, 2006, Yarbrough filed several pretrial motions on Shiver's behalf, including a motion to suppress evidence, a motion in limine, and

---

[4]  Yarbrough's wife was due to deliver a child on October 1, 2006.

[5]  Shiver does not challenge the adequacy of the district court's ends-of-justice findings.

10

a notice of intent to assert the affirmative defenses contained in 18 U.S.C. § 2252A(c) & (d). *See* Exhs. K, Q & R.  A hearing was held on the suppression motion on October 11, 2006, and on November 21, 2006, the court accepted the Magistrate Judge's recommendation that the motion be denied and entered an order denying the motion.  *See* Exhs. N, P & S.

On November 22, 2006, the Government filed a motion to continue the trial date from November 27, 2006, arguing that a continuance was necessary for the Government to procure the necessary witnesses to rebut the affirmative defenses noticed by defense counsel.  (Exh. T).  On November 27, 2006, Shiver, through Yarbrough, filed a waiver of speedy trial asking that the court find that the ends of justice served by granting a continuance outweigh the interest of the public and the defendant in a speedy trial.  (Exh. U).  A docket-sheet minute entry from a status conference held before the district court on November 27, 2006, reflects that on that same date, the district court continued Shiver's trial "generally," with a new trial date to be determined.  *See United States v. Shiver*, Case No. 1:05cr256-LSC, Docket Sheet (no pdf attached).  It cannot be determined from the record, however, whether the district court granted the continuance based on the Government's motion, Shiver's request, or both. The district court set another status conference for December 18, 2006, and it appears that this status conference was held as scheduled.  (*Id*., Doc. No. 72).

On March 2, 2007, Yarbrough filed a motion requesting a status conference and notifying the court that a conflict had developed between him and Shiver such that it was necessary that he be allowed to withdraw as Shiver's counsel.  (*Id*., Doc. No. 77).  On March

11

14, 2007, the district court entered an order providing that a hearing on Yarbrough's motion to withdraw would be set for a later date. (*Id.*, Doc. No. 78). On March 20, 2007, Yarbrough filed a formal motion to withdraw as Shiver's counsel. (Exh.V). On March 21, 2007, the district court entered orders setting the hearing on Yarbrough's motion to withdraw for April 2, 2007, and the date for commencement of Shiver's trial as May 21, 2007. (*Shiver*, Case No. 1:05cr256-LSC, Doc. Nos. 80 & 81).

Following an *ex parte* hearing held on April 2, 2007, the undersigned Magistrate Judge entered an order granting Yarbrough's motion to withdraw as Shiver's counsel and granting Shiver's request that he be allowed to proceed *pro se*. (Exh. W). On April 24, 2007, the Magistrate Judge appointed the Federal Defender to assist Shiver as standby counsel only. *See Shiver*, Case No. 1:05cr256-LSC Docket Sheet; *see also* Exh. X. Kevin Butler ("Butler"), an attorney with the Federal Defender's Office, gave notice of appearance as standby counsel for Shiver on April 27, 2007. (Exh. Y).

On May 2, 2007, Shiver filed a *pro se* motion for a continuance, along with another written waiver of his right to a speedy trial. (Exh. Z). Shiver asked for the continuance on the ground that he needed more time to discuss the strategy for his case with his standby counsel. (*Id.*) Although the district court, on May 3, 2007, initially entered a stamped order granting Shiver's motion to continue without making a specific ends-of-justice determination (Exh. AA), the court entered a written order on May 10, 2007, granting Shiver's requested continuance, making a full ends-of-justice determination, and continuing Shiver's trial until

12

July 23, 2007. *See Shiver*, Case No. 1:05cr256-LSC, Doc. No. 93.

On July 17, 2007, Shiver filed another *pro se* motion to continue his trial, along with another speedy-trial waiver and a request that the court appoint an attorney to represent him at trial. (Exhs. BB & CC). On July 18, 2007, the district court granted Shiver's motion to appoint counsel and ordered that Kevin Butler, who had been acting as standby counsel, represent Shiver at trial. (Exh. HH). However, the court denied Shiver's motion to continue the trial. (*Id*.) As noted, Shiver's trial commenced on July 23, 2007, with Butler acting as his counsel.

*Analysis*

In arguing that the Speedy Trial Act was violated in his case, Shiver does not specify which periods of delay between the withdrawal of his guilty plea and the start of his trial he believes constituted time not excludable from the speedy-trial calculation. As noted, it is not disputed that all time between defense counsel Yarbrough's July 6, 2006, filing of a motion for a continuance (approximately 37 days after the speedy-trial clock had begun to run) and the rescheduled trial date of November 26, 2006, was excludable under the Act, in light of the ends-of-justice determination the district court made when granting the continuance and rescheduling the trial. (Exh. J). *See* 18 U.S.C. § 3161(h)(7)(A).

During the period from March 2, 2007, when Yarbrough first notified the court that a conflict with Shiver required that he be allowed to withdraw as his counsel, through April 2, 2007, when Yarbrough's motion to withdraw was granted and Shiver's request that he be

allowed to proceed *pro se* was also granted, there were various motions before the district court – some of which required hearings – relating to Yarbrough's request to withdraw as counsel and Shiver's own request to represent himself.  Consequently, this time was excludable from the speedy-trial calculation pursuant to § 3161(h)(1)(F).

Shiver argues that the district court failed to make an ends-of-justice determination when granting the *pro se* motion for a continuance he filed on May 2, 2007.  However, although the court initially granted the motion by stamped order on May 3, 2007, and failed to make an ends-of-justice finding at that time, the court subsequently made a full ends-of-justice determination with respect to Shiver's *pro se* motion in a written order entered on May 10, 2007, in which the court granted the requested continuance and continued the trial to July 23, 2007 – the date on which the trial did in fact begin.  *See Shiver*, Case No. 1:05cr256-LSC, Doc. No. 93.  Under the circumstances, all time from Shiver's May 2, 2007, filing of his *pro se* motion for a continuance though the commencement of his trial is excludable from the speedy-trial calculation pursuant to § 3161(h)(7)(A).

Shiver filed his May 2, 2007, *pro se* motion for a continuance approximately one month after his request to represent himself was granted.  Because the claim in his § 2255 motion alleges the ineffective assistance of counsel for failing to assert a violation of the Speedy Trial Act, the court finds there was no "counsel" – other than Shiver himself – to fault for failing to assert a speedy-trial claim at any time during which Shiver was proceeding *pro se*.  Not until July 18, 2007, did Shiver move to have counsel appointed again; on that

14

date the district court appointed attorney Butler, who had been serving as standby counsel, to represent him.  Thus, for purposes of Shiver's instant claim, the period from April 2, 2007, through July 18, 2007, should be discounted from consideration in an analysis of counsel's performance.  In any event, much of this period was, as indicated above, excludable from a speedy-trial calculation in light of the district court's ends-of-justice determination made when the court granted Shiver's *pro se* motion for a continuance on May 10, 2007.

The period of delay about which this court is most concerned is the time between the district court's November 27, 2006, order continuing the trial and defense attorney Yarbrough's March 2, 2007, notice to the court that he believed he should be allowed to withdraw as Shiver's counsel.  The record reflects that the Government filed a motion for a continuance on November 22, 2006, seeking to continue the trial date from November 27, 2006, and asserting a need for time to procure witnesses to rebut the affirmative defenses Shiver had recently given notice of his intent to raise.  Further, on November 27, 2007, Shiver, through counsel, filed a waiver of speedy trial asking the court to find that the ends of justice served by granting a continuance outweighed the interest of the public and the defendant in a speedy trial.  However, in ordering on November 27, 2006, that the trial be continued "generally," the court did not make an ends-of-justice determination, and the court's basis for continuing the trial cannot be conclusively determined from the record.  As such, there is no apparent basis for excluding the period from November 27, 2006, through March 2, 2007, from the speedy-trial calculation.  Under the circumstances, then, this court

is compelled to conclude that more than the 70 days of unexcluded time allowed under the Speedy Trial Act passed without Shiver proceeding to trial. That, however, does not end the matter.

Shiver summarily argues that but for his counsel's failure to move for dismissal based on a violation of the Speedy Trial Act, the result of the proceedings would have been different because it was mandatory for the court to dismiss the indictment.[6] (Doc. No. 3 at 9-10). It is correct that if a defendant is not brought to trial within the Speedy Trial Act's 70-day period for unexcluded time, the district court is obligated to grant a defendant's motion to dismiss the indictment. *See* § 3162(a)(2). However, the court must still determine whether to dismiss the indictment with or without prejudice. In making this determination, the court must consider, among other factors (1) the seriousness of the offense; (2) the facts and circumstances that led to the dismissal; (3) the impact of a reprosecution on the administration of justice. 18 U.S.C. § 3162(a)(2); *see, e.g.*, *United States v. Brown*, 183 F.3d 1306, 1309 (11th Cir. 1999). "Where the crime charged is serious, the court should dismiss [with prejudice] only for a correspondingly severe delay." *United States v. Russo*, 741 F.2d 1264, 1267 (11th Cir. 1984). In considering the facts and circumstances warranting dismissal, the court should "focus on the culpability of the delay-producing conduct." *United States v. Williams*, 314 F.3d 552, 559 (quotation omitted). With respect to the impact of reprosecution on the administration of justice, the court should consider aggravating and

---

[6] A review of the record reflects periods of time after the speedy-trial clock had expired during which Shiver was represented by counsel.

16

mitigating factors such as the length of the delay and the prejudice suffered by the defendant. *Id*. at 560.

To succeed on an ineffective-assistance-of-counsel claim, a petitioner must demonstrate both that counsel provided deficient performance and that prejudice resulted from this deficient performance. *Strickland*, 668 U.S. at 687-88. Here, Shiver fails to demonstrate that he was prejudiced by his counsel's failure to seek dismissal of the indictment based on a violation of the Speedy Trial Act, because he fails to show that if his counsel had moved to dismiss the indictment, the district court would have granted a dismissal with prejudice. The Eleventh Circuit has recognized offenses involving the possession of child pornography as serious. *See United States v. Pugh*, 515 F.3d 1179, 1198-99 (11th Cir. 2008); *United States v. Cray*, 450 Fed. App'x. 923, 929 (11th Cir.) *cert denied*, — U.S. —, 133 S.Ct. 265 (2012). Further, the factual background contains no evidence of Shiver's desire to bring his case to trial in a speedier manner. Indeed, the opposite is true. Between November 27, 2006, and July 17, 2007, Shiver, either through counsel or acting *pro se*, filed three motions for continuances as well as three written waivers of his right to a speedy trial,[7] and at no time did he challenge the Government's requests for continuances or ask that his case be expedited. Shiver was also arguably "complicit" in the only period of

---

[7] This court recognizes that the provisions of the Speedy Trial Act cannot be waived by a defendant acting unilaterally through a prospective "for-all-time" waiver of his rights under the Act, because such would compromise the public interest in speedy justice. *See Zedner v. United States*, 547 U.S. 489 (2006). However, the court finds speedy-trial waivers by the defendant to be among the facts and circumstances properly considered in determining whether an indictment should be dismissed with or without prejudice based on a violation of the Act.

17

unexcludable delay during the relevant time: prior to the district court's granting of a "general continuance" on November 27, 2006, and on the heels of the Government's filing of a motion for a continuance in order to procure witnesses to rebut the affirmative defenses, Shiver filed a waiver of speedy trial and asked the court to grant a continuance based on an ends-of-justice determination.  There is, moreover, no evidence that the Government engaged in intentional dilatory tactics or exhibited a pattern of negligence that led to the delay in Shiver's trial.

The indictment charged that Shiver's offense took place from an unknown date to on or about December 18, 2004.  Thus, following a dismissal of the indictment without prejudice, the Government could have re-indicted Shiver on the same charge without transgressing the statute of limitations for his crime, placing Shiver in the same posture as before the dismissal.[8]  At least five federal circuits, including the Eleventh Circuit, have held that where an indictment would have been dismissed without prejudice, a defendant could not show prejudice based upon trial counsel's failure to seek dismissal under the Speedy Trial Act.  *Chambliss v. United States*, 384 Fed. App'x. 897, 899 (11th Cir. 2010) (per

_____

[8] At the time of the conduct alleged in the indictment, possession of child pornography was governed by the general five-year statute of limitations set forth in 18 U.S.C. § 3282 for non-capital offenses. On July 27, 2006, after the conduct alleged in Shiver's indictment occurred, Congress promulgated 18 U.S.C. § 3299, which eliminated the statute of limitations for possession of child pornography.  Pub.L. 109–248, Title II, § 211(a), July 27, 2006, 120 Stat. 616.  "[P]rosecution under a statute that purports to revive a limitations period after it has run would fall afoul of the Ex Post Facto Clause."  *United States v. Bischel*, 61 F.3d 1429, 1434 (9th Cir. 1995).  Congress can extend the statute of limitations after an offense is committed, however, without violating the Ex Post Facto Clause, so long as it enacts the extension before the original limitations period has expired.  *Clements v. United States*, 266 F.2d 397, 399 (9th Cir. 1959).  Here, not only would re-indictment have been timely under the general five-year statute of limitations § 3282, but the July 27, 2006, elimination of the statute of limitations for possession of child pornography effected by enactment of § 3299 took place before the original five-year limitations period expired.

curiam) (unpublished); *United States v. Thomas*, 305 Fed. App'x. 960, 964 (4th Cir. 2009) (unpublished); *United States v. Fowers*, 131 Fed. App'x 5, 6-7 (3rd Cir. 2005) (unpublished); *United States v. Rushin*, 642 F.3d 1299, 1309-10 (10th Cir. 2011); *United States v. Zapata*, 433 Fed. App'x 667, 671-72 (10th Cir. 2011) (unpublished); *Campbell v. United States*, 364 F.3d 727, 730-31 (6th Cir. 2004).  In light of the circumstances discussed above, the court finds that Shiver had not established that the outcome of the proceedings would have been different had his counsel moved to dismiss the indictment based on the violation of the Speedy Trial Act.  Shiver's failure to demonstrate prejudice in this regard precludes relief on his claim of ineffective assistance of counsel, both at trial and on appeal.

> **2.      Counsel's Failure to Prepare and Present Adequate Defense at Trial and Sentencing**

Shiver alleges generally that his counsel rendered ineffective assistance at trial and at sentencing by failing to prepare and present an adequate defense.  *See* Doc. No. 2 at 5; Doc. No. 3 at 11-14.  His specific claims with regard to this general allegation are discussed seriatim.

> **a.      *Counsel's Failure to Challenge Information Obtained from Original PSI and Used at Trial***

Shiver maintains that his trial counsel rendered ineffective assistance by failing to rebut or counter information obtained and used at trial by the Government from his original PSI, which was compiled before he withdrew his guilty plea.  (Doc. No. 2 at 5; Doc. No. 3 at 11-14).  As to this claim, Shiver makes no attempt to identify the information from his

original PSI that the Government allegedly used against him at his trial.[9]  By his bare and unsupported allegation, Shiver is unable to establish either deficient performance by counsel or resulting prejudice, as required under the *Strickland* standard.  *See Strickland*, 668 U.S. at 687-88.  As such, he is not entitled to relief based on this allegation of ineffective assistance of counsel.

### b.   Counsel's Absence from Second PSI Interview

Shiver alleges that his trial counsel rendered ineffective assistance by failing to be present at his second PSI interview, which he says resulted in information adverse to him being used for sentencing purposes.  (Doc. No. 2 at 5; Doc. No. 3 at 11-14).

In his affidavit filed with this court, attorney Butler addresses Shiver's claim, in pertinent part, as follows:

> ...  I attended [Shiver's] presentence interview.  Because Mr. Shiver had previously entered a guilty plea and been scheduled for sentencing, there was a preexisting presentence report and there was some debate as to whether another interview and report were necessary.  Nonetheless, an additional interview was held.  I was present at that interview.  A resulting second report was prepared in October 2006 [sic].[10]

(Doc. No. 12 at 5).

The second PSI contains a statement by the probation officer that suggests that Butler was indeed present at the interview conducted with regard to that PSI.  The probation officer

---

[9] In an affidavit filed with this court, Shiver's counsel Kevin Butler states that while the Government's case-in-chief at trial contained information that may also have been in Shiver's original PSI, the PSI was not the source of the information and the PSI was not used as evidence at trial.  (Doc. No. 12 at 5).

[10] The second PSI was actually prepared in October 2007.

states, "On advice of counsel, the probation officer did not question the defendant regarding his role in the offense upon subsequent interview in September 2007." (*Shiver*, Case No. 1:05cr256-LSC, Doc. No. 157 at 6, ¶ 12). Even assuming – against the evidence to the contrary – that Butler was not present at the second PSI interview, Shiver fails to point to any facts or present any convincing argument tending to show how he was prejudiced by Butler's absence. Shiver does not cite a single example of "information adverse to him [that] was used for sentencing purposes" as a result of Butler's alleged absence. His failure to establish any prejudice therefore forecloses the availability of relief on this claim of ineffective assistance of counsel. *See Strickland*, 668 U.S. at 697 (once a court decides that one of the requisite *Strickland* showings has not been made, it need not decide whether the other one has been).

### c.   *Counsel's Failure to Investigate and Ensure Accuracy of Information in PSI*

Shiver also asserts that his trial counsel rendered ineffective assistance by failing to investigate and ensure that the information contained in the PSI was accurate. (Doc. No. 2 at 5; Doc. No. 3 at 11-14). Butler avers that he reviewed the PSI with Shiver and that he later made objections to the PSI based on that review and consultation.[11] A review of the

---

[11] In his affidavit, Butler states, in part:

> I reviewed the presentence report with Mr. Shiver prior to sentencing and I made several objections to the presentence report. I also subpoenaed witnesses and presented testimony at Mr. Shiver's sentencing hearing. At least one of our objections was successful at the sentencing hearing. I successfully opposed an objection by the government.

(Doc. No. 12 at 5).

sentencing transcript demonstrates that Butler made and argued objections to the court during sentencing.  *See Shiver*, Case No. 1:05cr256-LSC, Doc. No. 165 at 48-51.  Butler successfully objected to the number of photographs the government sought to attribute to Shiver, and argued that the photographs were not sadistic.  (*Id*.)  In addition, Butler raised an objection to the PSI at sentencing regarding the range of sentence.  (*Id.* at 40-41).

Shiver fails to set forth facts sufficient to support a claim of ineffective assistance of counsel.  He wholly fails to indicate what information in the PSI was inaccurate or to suggest how further investigation by his counsel would have uncovered the supposed inaccuracies.  His cursory assertion of counsel's deficient performance is insufficient to sustain a claim of ineffective assistance of counsel.  Failing to establish deficient performance by counsel or any resulting prejudice, Shiver is not entitled to any relief based on this claim.  *Strickland*, 668 U.S. at 687-88.

### d.     Counsel's Failure to Present Affirmative Defenses

Shiver maintains that his counsel was ineffective for failing to present any affirmative defenses at trial as set forth in 18 U.S.C. § 2252A.  (Doc. No. 2 at 5; Doc. No. 3 at 11-14). Title 18 U.S.C. § 2252A provides affirmative defenses to defendants in child pornography prosecutions for any pornography that was not produced using an actual minor or minors, or where the defendant possessed fewer than three images of child pornography and promptly took reasonable steps to destroy each such image or "reported the matter to a law enforcement agency and afforded that agency access to each such image."  *See* 18 U.S.C. §

2252A(c) & (d).

With regard to Shiver's claim concerning his failure to present any affirmative defenses, Butler states, "[B]ased upon my investigation of the case, review of the evidence, and conversations with Mr. Shiver, I made the tactical decision not to pursue the affirmative defenses listed in 18 U.S.C. § 2252A." (Doc. No. 12 at 5). Shiver fails to set forth any facts or supporting argument demonstrating that Butler's tactical decision in this regard was unreasonable. More to the point, Shiver fails to show that the facts of his case warranted the presentation of either of the affirmative defenses set forth in § 2252A or to suggest in any convincing way that if the affirmative defenses had been asserted at his trial, the outcome of the proceedings would have been different. Shiver's cursory allegation of ineffective assistance of counsel fails to satisfy the two-prong standard of *Strickland*, 668 U.S. at 687-88, and wholly insufficient to overcome the presumption of counsel's effective representation. Therefore, he is not entitled to any relief based on this claim.

### e.    Counsel's Failure to Attack/Impeach Erroneous Testimony of Government Witnesses

Shiver claims that his counsel rendered ineffective assistance during trial by failing to attack or impeach the erroneous testimony of Government witnesses. (Doc. No. 2 at 5; Doc. No. 3 at 11-14). Once more, Shiver neglects to present sufficient specific facts in support of a claim for relief. He fails to identify any testimony by Government witnesses that was erroneous or subject to impeachment. Consequently, he cannot hope to demonstrate deficient performance by his counsel or any prejudice that resulted from counsel's

performance in this regard.  *See Strickland*, 668 U.S. at 687-88.  He is not entitled to any relief based on this cursory allegation of ineffective assistance of counsel.

>    ***f.***      ***Counsel's Failure to Challenge Government's***
>    ***"Selective Presentation of Facts"***

Shiver contends that his counsel was ineffective for failing to argue that the Government selectively presented facts to the jury.  (Doc. No. 2 at 5; Doc. No. 3 at 11-14).  Shiver's sole example of the Government's purportedly "selective presentation of facts" is as follows:

> For example, although it is a fact images of child pornography were found on Movant's computer, there was no proof that the Movant was viewing the referenced images as is an essential element of the charged offense, or that those images were not incidentally or accidentally downloaded.  Thus, by only selectively presenting the mere fact of these referenced images made what conceivably could have been an incidental or coincidental occurrence appear to be factual.

(Doc. No. 3 at 13).

Shiver's own presentation of the Government's evidence is highly selective, as the evidence at trial constituted far more than "the mere fact" that images of child pornography were found on his computer. The Eleventh Circuit discussed some of that evidence in its opinion affirming Shiver's conviction:

> To begin with, Shiver himself provided direct evidence that he knowingly possessed child pornography when he was interviewed by the police.  Upon being asked by investigators, "Do you have any child pornography?" Shiver responded, "I had a small amount but I think I pretty much well have gotten rid of it." Shiver's claim that in answering the question he was referring only to adult pornography is flatly contradicted by the record.

24

The government also produced substantial indirect evidence that Shiver knowingly possessed the images.  For example, during an interview with authorities, Shiver referred to himself as a "pedophile."  In addition, the government's computer expert testified that Internet searches conducted on Shiver's computer used words and terms that were likely to return pornographic images of children, and that many of the illicit images on Shiver's computer had been accessed on multiple occasions, thus belying Shiver's contention that a virus had placed the images on his computer without his knowledge.  The government's expert also opined that, as a technological matter, the images on Shiver's computer could not plausibly be accounted for by pop-up windows.

Shiver insists that since all of the images had been deleted and stored in his computer's unallocated files, and since he lacked the "forensic software" to access or retrieve the images from that location, he consequently lacked the ability to exercise dominion or control over the images.  But even assuming that Shiver was in fact unable to retrieve the images from the unallocated files, he was able to exercise control over the images by deleting them from his computer's cache.  Shiver suggests that viewing images and deleting them from a computer's cache cannot be sufficient to constitute knowing possession under the statute, for such a rule would create a perverse incentive for individuals who innocently discover child pornography on their computers to leave the illicit material in place.  Whatever concern such a prospect might raise in other circumstances, it presents no problem here, given the wealth of evidence indicating that Shiver actively sought to access child pornography.

*Shiver*, 305 Fed. App'x. at 643.[12]

Shiver's contention that the Government selectively presented evidence against him in a misleading manner is not supported by a review of the trial record or by anything to which Shiver points.  Thus, he cannot demonstrate that his counsel performed in a deficient manner by failing to argue that the Government selectively presented facts to the jury, or that

---

[12] Elsewhere in its opinion, the appellate court notes that "a receipt indicating the cancellation of a subscription to an Internet web site called 'Pure Teen Porn' was found in Shiver's home" and that "[r]egardless of whether the images on the site constituted child pornography, the receipt shows Shiver's familiarity with making commercial transactions for pornographic images on the Internet."  *See* 305 Fed. App'x at 642.

he was prejudiced by counsel's performance in this regard.  Consequently, he is not entitled to relief based on his claim of ineffective assistance of counsel.  *Strickland*, 668 U.S. at 687-88.

g.      ***Counsel's Failure to Argue Child Pornography Was Not Viewed by Shiver or Was Downloaded Accidentally***

Shiver claims that his trial counsel was ineffective for failing to argue that there was no proof he viewed the images of child pornography found on his computer or that those images were accidentally or incidentally downloaded to his computer.  (Doc. No. 2 at 5; Doc. No. 3 at 11-14).  This claim, however, is not supported by the record, which reflects that, throughout the trial, Shiver's counsel challenged the Government's proof concerning Shiver's knowledge of the pornographic images on his computer and whether Shiver had viewed them.  Further, at the close of the Government's case, Shiver's counsel moved for a judgment of acquittal on the ground that the Government had failed to prove that Shiver knew that the images of child pornography were on his computer.  (*Shiver*, Case No. 1:05cr256-LSC, Doc. No. 164 at 472-75, 488-89 & 528).  During closing arguments to the jury, Shiver's counsel argued that there was no direct evidence that Shiver knew the images were on his computer and that he had viewed them.  (*Id*. at 554-70).  The jury charge on Shiver's theory of defense was that Shiver did not knowingly possess the child pornography and did not know that the pornographic images were on his computer.  (*Id*. at 583).  The same argument was presented on direct appeal by Shiver's counsel.  *See* Exh. RR at 16-19.

Shiver's claim in his § 2255 motion conflicts with the record, which shows that his counsel zealously pursued the issue of whether Shiver had knowledge of and had viewed the images of child pornography found on his computer.  The evidence shows that Shiver's counsel argued exactly what Shiver wanted him to argue.  The fact that these arguments were not successful does not entitle Shiver to any relief based on this claim of ineffective assistance of counsel.

### h.    *Cumulative Effect of Counsel's Errors*

Shiver contends that the cumulative effect of his counsel's alleged errors discussed above in Parts II.B.2.a-h, considered in the aggregate, prejudiced his defense, even if no single error in isolation did so.  (Doc. No. 2 at 5; Doc. No. 3 at 14).  As the term "cumulative" suggests, "[c]umulative-error analysis applies where there are two or more actual errors.  It does not apply . . . to the cumulative effect of non-errors." *Moore v. Gibson*, 195 F.3d 1152, 1175 (10th Cir. 1999) (quoting *Castro v. Ward*, 138 F.3d 810, 832 (10th Cir.1998)) (internal quotation marks omitted).  Here, because Shiver has not established a single error in the claims discussed in Parts II.B.2.a-h of this Recommendation, no cumulative error can exist and this claim must fail.  *See United States v. Waldon*, 363 F.3d 1103, 1120 (11th Cir. 2004).

### 3.    Counsel's Interference with Right to Testify by Failing to Advise Petitioner of the Advantages and Disadvantages of Testifying

Shiver contends that his trial counsel rendered ineffective assistance by interfering

with his right to testify at trial in his own defense by failing to properly advise him about the

advantages and disadvantages of exercising his right to testify.  (Doc. No. 2 at 7; Doc. No.

3 at 14-15).  Shiver's claim is properly analyzed as an ineffective assistance of counsel claim.

*United States v. Teague*, 953 F.2d 1525, 1534 (11th Cir. 1992).[13]  The Sixth Amendment

right of a defendant to testify at his criminal trial is both fundamental and personal to him.

> Even more fundamental to a personal defense than the right of
> self-representation, which was found to be "necessarily implied by the
> structure of the [Sixth] Amendment,"···, is an accused's right to present his
> own version of the events in his own words.  A defendant's opportunity to
> conduct his own defense by calling witnesses is incomplete if he may not
> present himself as a witness.

*Rock v. Arkansas*, 483 U.S. 44, 52 (1987).  *See also Teague*, 953 F.2d at 1532 (A criminal

defendant has a "fundamental constitutional right to testify in his or her own behalf at trial.

This right is personal to the defendant and cannot be waived either by the trial court or by

defense counsel.")

When counsel prevents a defendant from exercising this fundamental right, counsel's

actions fall "below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.

Even in the context of a denial of the right to testify, a defendant who establishes the

performance prong of the *Strickland* analysis must still demonstrate prejudice by showing

that there is a reasonable probability that the results of the proceeding would have been

---

[13] In *Teague*, the en banc court specifically delineated the duties of a trial counsel with respect to a defendant's right to testify.  Counsel must advise the defendant (1) of his right to testify or not testify; (2) of the strategic implications of each choice; and (3) that it is ultimately for the defendant himself to decide whether to testify.  *United States v. Teague*, 953 F.2d 1525, 1533 (11th Cir. 1992).  Absent such advice, the defendant cannot effectively waive his right to testify.  *Id.*

different.  *Fishbone v. Sec'y for Dep't. of Corrs.*, 165 Fed. App'x. 800 (11th Cir. 2006)

(citing *Strickland*); *Nichols v. Butler*, 953 F.2d 1550, 1553 (11th Cir. 1992).

> Where counsel has refused to accept the defendant's decision to testify and refused to call him to the stand, or where defense counsel never informed the defendant of his right to testify and that the final decision belongs to the defendant alone, defense counsel "has not acted 'within the range of competence demanded of attorney's in criminal cases,' and the defendant clearly has not received reasonably effective assistance of counsel." *Teague*, 953 F.2d at 1534 (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052).

*Gallego v. United States*, 174 F.3d 1196, 1197 (11th Cir. 1999).

At the evidentiary hearing, Shiver testified that he met with his attorneys once or twice prior to trial, and that the time he spent with them was very short, perhaps only fifteen (15) minutes each time.  Shiver testified that he drove two hours to meet with his attorneys but met instead with the investigator on the defense team.  Shiver did not recall being prepared for trial by participating in mock direct and cross examinations.  At the evidentiary hearing, Shiver denied that the mock examinations occurred.  Shiver further testified that while he and Butler talked during the course of the trial about whether Shiver should testify, Butler advised Shiver not to testify.  According to Shiver, Butler said that "he didn't think [Shiver] should testify," or "I don't want you to testify."  Shiver did not recall whether Butler explained to Shiver that it was Shiver's decision to testify, but nonetheless, Shiver testified that he did not really understand that the decision to testify was his.

Shiver testified that he wanted to testify at his trial because he wanted to tell the jury what happened in "a whole new light."  According to Shiver, he would have testified that

other people had access to the computer, and that any child pornography on his computer was placed there by a "Trojan horse virus."  According to Shiver, the virus caused pop-ups to appear on his screen and the pop-ups allowed the computer to connect to Internet and download the pornographic images.  He also testified that he would have  pointed out inconsistencies in the testimony of the state investigators as well as inconsistencies in the government's investigations.

Butler, Shiver's trial lawyer, also testified at the evidentiary hearing. He testified that while he was initially appointed as stand-by counsel, five (5) days prior to trial he was appointed to represent Shiver.  During those five days, Butler and his co-counsel, Morad Fakhimi, worked 12 to 14 hour days preparing for Shiver's trial.  Because Butler anticipated that Shiver would want to tell his story, the defense team prepared Shiver for trial by engaging in mock direct and cross-examinations.

Butler also testified that he recalled discussing with Shiver his desire to testify as well as the advantages and disadvantages of testifying.  In particular, because Shiver was also being prosecuted on state charges of child molestation of his five (5) year-old step niece, Butler did not want Shiver to be subjected to cross-examination at trial on that charge.  Butler also testified that based on how he conducted himself during the mock direct and cross-examinations, Butler did not think Shiver would present well as a witness because Shiver "tended to over-explain," and his answers in the mock examinations went beyond the scope of the questions asked.  Butler was concerned that Shiver would "open the door" on areas of

30

examination that were better left shut.  Based on his twenty-plus years of experience, Butler told Shiver it would not be "in his best interest" to testify.  Butler also testified that he again discussed with Shiver his right to testify during the trial, specifically after the government rested.  At that time, Butler advised Shiver that it was not in his best interest to testify, but that the ultimate decision was Shiver's.  During the evidentiary hearing, Shiver testified that he would have testified even if Butler had explained the potential hazards of testifying.

Given this state of the evidence, it is necessary for the court to determine to whether Shiver and Butler are credible witnesses.  In making its credibility determination, the court recognizes that it is improper to determine credibility based on the "status" of a witness. *United States  v. Ramirez-Chilel,* 289 F.3d 744, 749 (11th Cir. 2002).  Thus, Shiver's status as a convicted felon is not determinative.  Rather, the responsibility of the court is to weigh the testimony of all the witnesses, taking into account the interests of the witnesses, the consistencies or inconsistencies in their testimonies, and their demeanors on the stand. *Gallego*, 174 F.3d at 1198.

First, the court finds that before trial Shiver and defense counsel discussed whether Shiver would testify.  *See United States v. Camacho*, 40 F.3d 349, 355 (11th Cir. 1994).  Second, the court finds that counsel advised Shiver that it was not in his best interest to testify because his testimony might lead to the introduction of evidence related to the pending state child molestation charge.[14]  *See Nichols v. Butler*, 953 F.2d 1550, 1553 (11th Cir. 1992).

---

[14]  Prior to jury selection in Shiver's trial, the court heard argument on several motions in limine related to Shiver's sexual abuse conviction and Shiver's inculpatory statements to law enforcement officers.

Third, the court finds Butler to be a credible witness. Butler has no interest in the outcome of this case. Butler's testimony was consistent with his affidavit and the affidavit of his co-counsel, Morad Fakhimi, corroborated Butler's testimony that the attorneys discussed with Shiver his right to testify prior to trial.[15] *See* Doc. # 9. Fourth, the court finds that there is no evidence that Shiver asserted his right to testify at trial.[16] *See Lambrix v. Singleton*, 72 F.3d 1500, 1508 (11th Cir. 1996) (petitioner failed to show that some action by counsel deprived him of his right to testify). Fifth, the court finds that there is no evidence that Butler interfered with Shiver's right to testify at trial, or refused to allow him to testify.[17]

Lastly, the court does not find Shiver to be a credible witness. First, his criminal history as well as his obvious interest in the outcome of this case militates strongly against his veracity. Second, Shiver's testimony at the evidentiary hearing was contradictory and equivocal. For example, at one point, Shiver testified that the attorneys were "throwing information at him." Shiver then testified that he only met with the attorneys once or twice.

---

At that time, the parties agreed that only a portion of Shiver's statement would be admissible unless Shiver testified. (*Shiver*, Case No. 1:05cr256-LSC, Doc. No. 164 at 34 & 37). The government also indicated that it would only offer Shiver's 2007 sexual abuse conviction into evidence if Shiver testified. (*Id.* at 24 & 41).

[15] In his affidavit, Fakhimi stated that "there was a discussion about the defendant's right to testify the weekend before trial commenced." (Doc. # 9 at 4, ¶ 12

[16] The law in this Circuit is clear that the court was not required to advise Shiver of his right to testify, nor was it required to get a waiver of the right to testify on the record. *See United States v. Van de Walker*, 141 F.3d 1451 (11th Cir. 1998).

[17] *See generally Salinas v. Texas*, — U.S. —, 2013 WL 2922119 (June 17, 2013) ("The critical question is whether, under the "circumstances" of this case, petitioner was deprived of the ability to voluntarily invoke the Fifth Amendment." In this case, there is simply no evidence before the court that counsel interfered with or otherwise deprived Shiver of his right to testify.

Initially, Shiver testified that he met with the attorneys for an hour but then he testified that he met with them "very few times and for very few minutes."  Shiver then explained that he would wait an hour to see the attorneys but the meetings were only fifteen minutes.  Shiver also admitted that Butler discussed with him during the trial his right to testify.  However, according to Shiver, he did not understand that it was his decision to testify.  During questioning by the court, Shiver testified that Butler simply told him during the trial that Butler did not want Shiver to testify.  According to Shiver, the statement "came out of the blue."  Third, the court has carefully considered the demeanor of Shiver during his testimony and does not credit his testimony that he did not recall being prepared for trial or participating in any mock examinations.  Fourth, prior to trial, Shiver notified the court of his intent to change his plea and participated in the change of plea hearing on February 8, 2006.[18] (*Shiver*, Case No. 1:05cr256-LSC, Doc. No. 156).  Shiver testified during the evidentiary hearing that he did not recall being placed under oath during the plea hearing and that he did not remember being questioned during the colloquy.  According to Shiver, if the transcript of the plea hearing demonstrated that he was placed under oath, and that he answered questions, then the transcript was simply wrong.[19]  Finally, after hearing and observing Shiver both at the plea colloquy and during the evidentiary hearing, the court

---

[18]  Because the court indicated at sentencing that it was going to reject the plea agreement, Shiver moved, and was permitted, to withdraw his guilty plea.  *See Shiver*, Case No. 1:05cr256-LSC, Doc. No. 168.

[19]  The court takes judicial notice of its own records including the change of plea transcript filed in *Shiver*, Case No. 1:05cr 256-LSC, wherein Shiver was placed under oath and answered a number of questions for the court. (Doc. No. 156 at 2 - 22).  Moreover, the undersigned Magistrate Judge was the presiding judicial officer during that proceeding.

concludes without hesitation that no competent attorney would have believed it was in Shiver's interest to testify on his own behalf.  For these reasons, the court finds that Shiver lacks credibility.  Consequently, the court does not credit Shiver's testimony that Butler did not discuss with him the advantages and disadvantages of testifying at trial.[20]  Based on this finding, it is not necessary for the court to consider whether Shiver's counsel's actions regarding his testifying were ineffective.  Shiver is not entitled to relief on this claim.

### 4.     Counsel's Failure to Argue *Miranda* Violation

Shiver contends that his trial counsel rendered ineffective assistance by failing to argue against admission of "certain statements" at trial "that . . . [were] the product of "unMirandized" statements.[21]  (Doc. No. 2 at 8).  According to Shiver, an unnamed counselor

> provided un-Mirandized incriminating and false statements . . . in order to justify the local police subsequently interrogating [him].  The content of the un-Mirandized and incriminating statements, and statements falsely attributed to [him], were used against [him] at trial.

(Doc. No. 3 at 15-16). Shiver accuses counsel of failing to object to the introduction of this evidence.  (*Id*. at 16).

The problem with Shiver's claim is it is simply wrong.  First, none of the statements he made to the counselor and none of the counselor's statements were admitted into evidence

---

[20]  Indeed, based the evidence against Shiver it is difficult to imagine how his testimony would have shed "a whole new light" on the events.  While this is not the standard for reviewing claims about failure to testify, the court may consider such fanciful claims with regard to the credibility of Shiver.  The court has done so in this instance and this consideration merely strengthens the court's conclusion that Shiver's credibility is nil.

[21] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

at trial.[22]   Consequently, the court is hard-pressed to fault counsel for failing to object to evidence neither offered nor admitted.

Moreover, prior to trial, both of Shiver's attorneys attempted to prohibit the admission of Shiver's statements.   Yarbrough, Shiver's first attorney, challenged the admissibility of Shiver's statements in a motion to suppress.[23]   *See Shiver*, Case No. 1:05cr256-LSC, Doc. No. 46.   After an evidentiary hearing, the undersigned recommended that Shiver's motion to suppress be denied because at no time was a counselor compelled to testify against Shiver. (*Id*. at Doc. No. 59).   On November 21, 2006, the court adopted the Recommendation

---

[22]   Shiver asserts this claim in a conclusory manner.   He does not identify which statements he alleged were false or admitted into evidence.

[23]   In the motion to suppress, Shiver sought to suppress all oral and written statements he made to two counselors as well as statements made to law enforcement officers.   Although Yarbrough argued that Shiver's statements to his counselors were privileged communications protected by the psychotherapist-patient privilege, a challenge based on *Miranda*, *supra*, would have been equally unavailing because *Miranda* warnings are only required for custodial interrogation.   *Miranda*, 384 U.S. at 444.   Custodial interrogation involves "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."   *Id*.; *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).   Here, the record reflects that Shiver's statements to his counselors were not made in response to custodial interrogation.   Shiver initiated his contact with the counselors, seeking help from them in their capacities as mental health counselors.   *See* Exh. N at 6-30.   The counselors did not hold themselves out to Shiver as a law enforcement officer, and they were not acting in conjunction with law enforcement when Shiver made his statements.   Because Shiver's statements to the counselors were not made during a custodial interrogation initiated by a law enforcement officer holding themselves out as a state agent, no *Miranda* warnings were required.   *See Cook v. Warden, Ga. Diagnostic Prison*, 677 F.3d 1133, 1140 (11th Cir. 2012) (no *Miranda* violation where defendant's confession to his father was admitted at trial despite lack of warnings to defendant, even though father was FBI agent, inasmuch as father was chiefly acting as defendant's father, not as law enforcement agent).   Thus, Shiver's attorneys were not ineffective for failing to argue against admission of his statements because of the absence of a *Miranda* warning.

To the extent that Shiver argues that his statement to the Enterprise police should have been challenged as inadmissible, he is entitled to no relief on this basis either.   After Shiver made statements to the counselors, he was transported to the Enterprise Police Department where he was informed of the allegations against him and advised of his *Miranda* rights.   After being advised of his rights, Shiver consented to an interview.   Only after he had been advised of his rights, and he consented, was he subjected to a custodial interrogation.   Counsel is not ineffective for failing to argue a meritless issue.   *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).

without objection.  (*Id*. at Doc. No. 68).

After he was appointed to represent Shiver and on the eve of trial, Butler filed a motion in limine to suppress the counselor's statements, and a motion to reconsider the denial of his motion to suppress.  (*Id*. at Doc. No. 123 & 129).  Prior to trial, Butler argued that the counselors should not have testified at the suppression hearing, and that all the evidence gathered "in this case has been the fruit of violation of [the psychotherapist-patient] privilege, and as a result of that, Your Honor, it's our position that all evidence [] should be excluded." (*Id*. at Doc. No. 164 at 9).  At that time, the government represented to the court that they would not call the counselors or seek to admit any of Shiver's statements to them.  (*Id*. at 11). Clearly, Shiver's claim is factually wrong, and consequently, he is not entitled to any relief based on this claim.

### 5. Appellate Counsel's Failure to Challenge District Court's Ruling Denying Removal of Juror

Shiver contends that his appellate counsel rendered ineffective assistance by failing to raise on appeal the district court's alleged error in denying removal of a juror purportedly related to the victim's family in a state case where Shiver had been charged with child molestation.  (Doc. No. 2 at 10; Doc. No. 3 at 16).

After voir dire and prior to the striking of the jury, Shiver maintained that he believed the juror in question, S.M., was related to his ex-wife and was therefore related to the victim in Shiver's separate state prosecution on charges of child molestation.  (*Shiver*, Case No. 1:05cr256-LSC, Doc. No. 164 at 115).  However, Shiver did not present any evidence of the

existence of such a familial relationship.[24]  S.M. was not struck during jury selection, and he

served on Shiver's jury.

During the second day of trial, Shiver improperly approached S.M. outside the jury

assembly room and attempted to ask him if he was related to his ex-wife.  (*Id*. at 361-72).

This conduct resulted in Shiver's being remanded to the custody of the United States

Marshal.  (*Id*).  Although the improper contact with S.M. was initiated by Shiver, Butler,

Shiver's counsel, sought removal of S.M. from the jury, and requested a mistrial, on the

ground that S.M.'s demeanor when he was approached by Shiver suggested that he

disapproved of, and was therefore biased against, Shiver.  (*Id*. at 515-20).  When questioned

on this matter by the court, S.M. indicated that Shiver's actions in approaching him would

not influence his verdict.  (*Id*. at 517).  The court did not remove S.M. from the jury and

denied the defense's motion for a mistrial.  Shiver has yet to come forward with any evidence

that S.M. was, in fact, related to his ex-wife.

In addressing Shiver's allegation of his deficient performance on appeal, Butler states,

in pertinent part, as follows:

> In this claim Mr. Shiver asserts undersigned counsel was ineffective for failing
> to appeal the district court's denial of removal of [a] (sic) potential prejudiced
> juror.  During trial, Mr. Shiver was admonished and remanded into custody for
> improperly speaking with jurors.  After reviewing the entire trial transcript
> undersigned counsel determined and presented what it determined to be the
> most meritorious appellate issues.   Given the totality of facts and
> circumstances surrounding Mr. Shiver's conduct that led to his custodial

_____

[24] Shiver's belief in this regard was apparently based on the fact that S.M. and his ex-wife had the
same last name.

> remand and the potential prejudice, the testimony of the potentially prejudiced
> juror and the applicable law, I determined this issue should not be presented
> on appeal.

(Doc. No. 12 at 8).

Shiver has not demonstrated that error was committed by the district court with regard to juror S.M.  Under the circumstances, Butler's decision not to include Shiver's unproven claim in his appellate brief was professionally reasonable.  Shiver's failure to establish deficient performance by counsel or any resulting prejudice forecloses the availability of relief on this claim of ineffective assistance of counsel.  *Strickland*, 668 U.S. at 687-88.

### 6.     Counsel's Failure to Object to Number of Images Used to Determine Sentence

Shiver contends that his trial counsel rendered ineffective assistance by failing to object at sentencing to the number of child pornography images that were used to determine his sentence under the Sentencing Guidelines.  (Doc. No. 2 at 10; Doc. No. 3 at 16-17).  In this regard, Shiver says:

> The images allegedly obtained from Movant's computer were used against the
> Movant for sentencing purposes.  However, the Movant was not aware of nor
> had [he] ever seen any of those images.  In fact, it would have taken forensic
> analysis and techniques to obtain those images if, in fact, they had been located
> somewhere in Movant's computer.  Because these referenced images were not
> located by forensic technicians, there is certainly a reasonable probability they
> never existed on Movant's computer or, in the alternative, such images were
> downloaded onto Movant's computer without Movant's knowledge.  Failure
> of counsel in this case to call a forensic technician to rebut the Government on
> this issue, is indicative of ineffective assistance.

(Doc. No. 3 at 16-17).

Addressing Shiver's claim in this regard, Butler states:

> In this claim Mr. Shiver asserts undersigned counsel was ineffective for failing to object to the number of pornographic images used for sentencing purposes. However, in his discussion Mr. Shiver argues that because he had no knowledge of the images found on his computer they could not be used against him at sentencing. The claim and the argument supporting the claim are conflicting. Furthermore, the claim is erroneous and without merit. Mr. Shiver was convicted of knowingly possessing child pornography. Therefore, at sentencing his "lack of knowledge" was no longer at issue. The issues presented at sentencing related to the number and nature of the images the court determined Mr. Shiver possessed. At sentencing, I objected to the number of images the government sought to apply to Mr. Shiver and was able to convince them to reduce their request for a guideline enhancement based upon the quantity of images possessed by Mr. Shiver.

(Doc. No. 12 at 8-9).

As Butler notes in his affidavit, Shiver's argument regarding his "lack of knowledge" of the presence of the pornographic images on his computer had been decided adversely to Shiver at trial and was no longer an issue at sentencing.[25]  Thus, Butler's decision not to present such an argument at sentencing was professionally reasonable.

The pertinent issues at sentencing concerned the number and nature of the images Shiver possessed; specifically, how many of the images constituted actual child pornography, and which of the images depicted sadistic or masochistic conduct.  *See* Exh. PP.  At sentencing, the government objected to the probation officer's assessment that the offense involved between 10 and 150 images.  According to the government, Shiver possessed more

---

[25] Butler is also correct in noting that although Shiver styles this claim as one faulting Butler for failing to object to the *number* of child pornography images used to determine his sentence, Shiver's argument under this claim is addressed entirely to the questions of *how* the pornographic images got on his computer and whether he had knowledge of their presence on his computer.

than 300 images, a number which would have increased his offense level.  Butler challenged the government's number of images, and secured a concession from the United States that Shiver possessed "297 images, and some portion of those images may or may not actually constitute child pornography under the definition of the statute."  (*Shiver*, Case No 1:05cr256-LSC, Doc. No. 165 at 20).  In addition, Butler objected to the PSI's increased offense level based on a determination by the probation officer that the images were sadistic or masochistic.  (*Id*. at 48-55).

In short, Butler did challenge the number of images successfully resulting in a decreased offense level.  Shiver fails to establish either deficient performance by counsel or any resulting prejudice.  Therefore, he is not entitled to any relief based on this claim of ineffective assistance of counsel.  *Strickland*, 668 U.S. at 687-88.

## 7.    Counsel's Failure to Challenge District Court's Refusal to Accept Plea Agreement

Shiver argues that his attorneys rendered ineffective assistance of counsel by failing to object to the district court's refusal to accept the plea agreement and by failing to raise this issue on appeal.  (Doc. No. 2 at 10-11; Doc. No. 3 at 17).

On May 30, 2006, at Shiver's originally scheduled sentencing hearing – which followed his earlier guilty plea to the child-pornography charge – the district court informed the parties, including Shiver and his attorney at the time, Derek E. Yarbrough, that the court was disinclined to accept the Government's low-end-of-the-guidelines sentencing

recommendation as provided in the plea agreement,[26] and indicated that it might impose a sentence less favorable to Shiver than the plea agreement contemplated.  *See* Exh. H.  The court also informed the parties that a two-level "offense characteristic" reduction called for in the plea agreement could not be applied to Shiver.  (*Id*. at 8-10).  *See* U.S.S.G. § 2G2.2(b)(1)(C).  *See also* Exh. F at 3.  After some discussion as to whether a decision by the court not to follow the Government's recommendation in regard to sentencing and not to allow the offense-characteristic reduction would constitute a rejection of the plea agreement or was a discretionary determination allowed under the plea agreement's terms, the court rejected the plea agreement.  (Exh. H at 2-9).  The court also stated that, in any event, it was concerned that Shiver, when pleading guilty, did not fully understand that the court was not bound by the Government's sentencing recommendation.  (*Id*.).  The court then advised Shiver that he would be allowed to withdraw his guilty plea if he so chose.  (*Id*. at 7-9).  After consulting with Yarbrough, Shiver elected to withdraw his guilty plea.  (*Id*. at 9-10).

According to Yarbrough's affidavit filed with this court, Shiver's decision to withdraw his guilty plea was against the advice of counsel.  (Doc. No. 10 at 3-4).  Shiver has filed nothing to dispute Yarbrough's contention in this regard.  For his part, Butler avers that he did not challenge the district court's actions on appeal because no error was committed. (Doc. No. 12 at 9).

---

[26] This provision of the plea agreement stated that "[t]he Government agrees to a sentence at the low end of the applicable guideline range."  (Exh. F. at 3).

FED.R.CRIM.P. 11(c)(5) authorizes the district court to reject a plea agreement containing provisions where the government has agreed that a specific sentence or sentencing range is appropriate, or that a particular provision of the sentencing guidelines does or does not apply. *See* FED.R.CRIM.P. 11(c)(5) & 11(c)(1)(C). In addition, FED.R.CRIM.P. 11(d)(2) provides that a defendant may withdraw his guilty plea before imposition of sentence if a court rejects a plea agreement under Rule 11(c)(5) or if the defendant can show "a fair and just reason for requesting withdrawal." *See* FED.R.CRIM.P. 11(d)(2)(A) & (B).

Here, Shiver cites no facts or legal support for his claim that the district court erred in refusing to accept the plea agreement. The court properly exercised its authority in rejecting the plea agreement and allowing Shiver to withdraw his plea and proceed to trial. Shiver's counsel's decision not to present such a claim on appeal was professionally reasonable. Moreover, Shiver fails to establish that he was prejudiced by counsel's failure to present this claim on appeal. Consequently, he is not entitled to any relief based on this claim of ineffective assistance of counsel. *Strickland*, 668 U.S. at 687-88.

### 8. Counsel's Failure to Challenge District Court's Mandatory Treatment of Sentencing Guidelines and Noncompliance with 18 U.S.C. § 3553(a)

Shiver contends that his counsel rendered ineffective assistance by failing to object to the district court's "mandatory treatment" of the United States Sentencing Guidelines and its failure to comply with 18 U.S.C. § 3553(a) in determining his sentence, and by failing to raise this issue on appeal. (Doc. No. 2 at 11; Doc. No. 3 at 17-18). Shiver points to no

evidence indicating that the district court treated the sentencing guidelines as mandatory or that the court failed to comply with § 3553(a). The record reflects that at sentencing, and again at resentencing on April 24, 2009, the district court recognized the guidelines as advisory and indicated that it had considered the § 3553(a) factors in determining Shiver's sentence. (Exh. PP at 26-27; Exh. TT at 4). Further, after Shiver was resentenced, the Eleventh Circuit determined that the district court had considered the § 3553(a) factors when imposing sentence. *See Shiver*, *supra*. Counsel is not obligated to argue meritless claims. *Chandler*, 240 F.3d at 917; *Winfield*, 960 F.2d at 974. Shiver fails to establish deficient performance by counsel or any resulting prejudice; therefore, he is foreclosed from obtaining relief on this claim of ineffective assistance of counsel. *Strickland*, 668 U.S. at 687-88.

### 9. Appellate Counsel's Failure to Raise Issues Presented in §2255 Motion

Finally, Shiver contends in cursory fashion that his appellate counsel was ineffective for failing to raise on appeal all the issues he presents in his § 2255 motion. (Doc. No. 2 at 11; Doc. No. 3 at 19-20). Shiver, however, fails to demonstrate that his claims have merit or that was prejudiced in any way by his counsel's failure to raise the claims he presents in his § 2255 motion. Moreover, ineffectiveness of counsel claims will generally not be considered on direct appeal where a district court did not consider the claim or develop a factual record. *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010.) Shiver is not entitled to any relief based on this allegation of ineffective assistance of counsel.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Shiver be DENIED.

It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before July 9, 2013.**  A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 25th day of June, 2013.

        _____/s/ Charles S. Coody_____
        CHARLES S. COODY
        UNITED STATES MAGISTRATE JUDGE